## STUART et al. v. MATHEWS.

No. 13426—Opinion Filed Nov. 12, 1924.

### 1. Brokers—Procuring Cause of Sale.

In order for a broker to be the procuring cause of a sale, he must, not only first call the attention of the purchaser to the property, but he must start negotiations which culminate in the sale of said property.

### 2. Same—Question of Fact—Conclusiveness of Verdict.

The question of whether the broker was the procuring cause of the sale is one of fact, and the verdict will not be disturbed on that issue, where there is any evidence reasonably tending to support the same.

### 3. Brokers—Earning Commission—Right to Conceal Name of Prospective Buyer.

The failure of a broker to disclose to the owner the name of the prospective purchaser with whom he is negotiating, at the time of the listing of the property with the broker for sale, is not a lack of diligence nor of integrity that the broker owed the owner, and which would forfeit the right of the broker to his commission, unless the name of the prospective purchaser was fraudulently concealed from the owner.

(Syllabus by Jarman, C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, Oklahoma County; Edward Dewes Oldfield, Judge.

Action by E. S. Mathews against R. T. Stuart and R. T. Stuart & Company. Judgment for plaintiff, and defendants bring error. Affirmed.

Rittenhouse & Rittenhouse, for plaintiffs in error.

Wright, Blinn & Gilmer, for defendant in error.

Opinion by JARMAN, C. This was an action in the district court of Oklahoma county by E. S. Mathews against R. T. Stuart and R. T. Stuart & Company, a corporation, to recover a broker's commission of $500 alleged to be due in connection with the sale of certain real estate. The cause was submitted to the court and jury, resulting in a verdict for the plaintiff in the amount sued for on which judgment was rendered and the defendants bring error.

R. T. Stuart & Company was interested in and promoted the sale of certain lands in the Rio Grande Valley in the state of Texas, and maintained its headquarters at Oklahoma City. R. T. Stuart was the president of the company, and the plaintiff, Mathews, was a broker and assisted the company in the handling and selling of its real estate. The plaintiff negotiated a sale of 40 acres in the Rio Grande Valley to a Mr. Corn, and, as part consideration, the company took in a farm in Oklahoma county from Mr. Corn. The plaintiff was paid his commission for this deal. During the latter

part of 1919, R. T. Stuart, for and on behalf of the company, rented the "Corn" farm to Charles Crosby, and, at that time, Mr. Stuart told Crosby that he had rather sell the farm to him than to rent it, and Crosby stated that he was not able to buy the farm, and thereupon Stuart replied that he would rent it to him then and that perhaps by the end of the year a deal could be worked out whereby Crosby could buy the farm. In May, 1920, Crosby went to the office of R. T. Stuart & Company at Oklahoma City for the purpose of seeing Mr. Stuart about some telephone stock, and Mr. Stuart, not being in, Crosby entered into a conversation with the plaintiff in which he inquired as to what disposition was going to be made of the "Corn" farm, and the plaintiff stated, "I am going to sell it to you." Crosby inquired about the price but no agreement was reached at that time, and on the following day the plaintiff went out to the farm, a distance of about five miles from Oklahoma City, to see Crosby further about selling the farm to him. Crosby offered $16,000 and the plaintiff made the proposition that he would sell the farm to Crosby for $17,000, and on the following day Crosby went back to the office of R. T. Stuart & Company at Oklahoma City and had further negotiations with the plaintiff with regard to purchasing said farm, and at that time the plaintiff wired Mr. Stuart, who was then in Texas, as follows:

"Offered $17,000 Corn's farm — $3,000 cash, $2,000 January 1st—balance three annual payments; sale subject five per cent. brokerage."

And in reply thereto Stuart wired the plaintiff as follows:

"Will pay $500 commission your last wire of five per cent. straight if all cash."

The plaintiff had, prior to these telegrams, wired Stuart the proposition of Crosby's of $16,000 for the farm and no answer was made by Stuart to that telegram.

Before the plaintiff could proceed further with his negotiations for the sale of the farm to Crosby he had to go to Westville on some business and then to the Rio Grande Valley. Upon his leaving for Westville he requested Mr. Howard, vice president of R. T. Stuart & Company, to call the attention of Stuart, upon his returning to the office, to the fact that Crosby was negotiating for the purchase of said farm. Prior to the return of plaintiff to Oklahoma City, Mr. Stuart arrived and personally entered into negotiations with Crosby for the sale of said farm and concluded the sale to him at an increased amount and on different terms from those discussed by the plaintiff with Crosby and submitted to Stuart by telegram.

The evidence on all the material issues involved is in sharp conflict. Howard, the vice president, testified that, at the time Crosby first discussed with the plaintiff the purchasing of the farm, he, Howard, told the plaintiff that he would not receive and could not expect, a commission for the sale of this farm. This, however, is denied by the plaintiff. R. T. Stuart testified that he did not know from the telegrams received who was negotiating for the purchase of said farm as the name of the prospective purchaser was not disclosed, and that if he had known that his tenant, Crosby, was the prospective purchaser referred to in the telegrams that he would not have answered the telegrams at all for the reason that sale negotiations had already been entered into between Crosby and himself; that the plaintiff knew and understood that no commission was to be paid for the sale of land such as this that the company had taken in on the purchase price of land sold by the company in the Rio Grande valley.

The defendants contend (1) that the plaintiff was not the procuring cause of the sale to Crosby; (2) that the plaintiff knew he was not entitled to the commission for the sale of said land to Crosby; and (3) that the plaintiff concealed the fact that Crosby was the prospective purchaser referred to in his telegram and that the procuring of the agreement from Stuart to pay a commission to the plaintiff for the sale of said land was fraudulent. All of these contentions are submitted under the assignment of error that the court erred in refusing to instruct the jury to return a verdict for the defendants.

The defendants insist that the plaintiff was not the procuring cause of the sale to Crosby for the reason that he was not the first to call the purchaser's attention to the property, and that he did not start negotiations with the purchaser which culminated in the sale thereof. It is true that the undisputed evidence shows that several months before negotiations were entered into between the plaintiff and Crosby for the sale of this land, R. T. Stuart had told Crosby that he would like to sell the farm to him, but no negotiations of any kind were had between Crosby and Stuart with reference to the sale of the place at that time; no price was placed on the farm by Stuart, and Crosby did not indicate that he entertained any idea of ever purchasing the farm, and there is nothing in the record to in-

dicate that Crosby was interested in purchasing this property until the plaintiff began negotiations with him; and, as far as the record discloses, Crosby did not know but what the farm had been taken off the market and was not for sale at the time of his negotiations with the plaintiff. Stuart never had any negotiations with Crosby for the sale of this farm until after the plaintiff had entered into negotiations with Crosby and then the name of the prospective purchaser, Crosby, was disclosed by the plaintiff to the defendants through the vice president, Howard, and through this disclosure negotiations were instituted by Stuart, culminating finally in the sale of the property to Crosby. The question of whether the plaintiff was the procuring cause of the sale is one of fact and there being evidence reasonably tending to support the verdict the same will not be disturbed on appeal. Wheelan v. Hunt, 37 Okla. 523, 133 Pac. 52. In this connection the defendants cite the rule laid down in the case of Pitts v. Pitts, 63 Okla. 185, 164 Pac. 105, as being the one that should govern here. There the court held that where the purchaser had already seen the property and was fully advised with reference to the same and had already determined to purchase the same, that the mere introduction of the prospective purchaser to the owner by the broker does not entitle the broker to the commission on a sale thereafter made by the owner to said prospective purchaser. The trouble with the Pitts Case and the other cases cited by counsel for the defendants is that they are not applicable to the state of facts in the instant case for the reason that Crosby had not determined to purchase this property at the time he came in contact with the plaintiff, the broker.

The defendants contend that the failure of the plaintiff to disclose, in the telegram to Stuart, that Crosby was the prospective purchaser was a violation of the duty the agent owed his principal, and amounted to fraud upon the defendant, and for that reason the plaintiff was not entitled to recover, and defendants cite in support of this proposition the case of Weleetka Light & Water Company v. Burleson, 42 Okla. 748, 142 Pac. 1029, and other authorities. In the Burleson Case the plaintiffs sought to recover from the Weleetka Light & Water Company certain amounts claimed to be due him for services rendered said company, and the record shows that Burleson, the agent of the Weleetka Light & Power Company, had collected and not accounted for large sums of money belonging to his principal, and the court laid down the following rule:

"The agent owes his principal diligence, integrity and skill; and it is generally held that an agent forfeits all his right to compensation by willfully neglecting to keep and render accurate accounts of his agency, or by rendering false accounts."

The failure of the plaintiff to furnish the name of the prospective purchaser could not, in any manner, amount to a fraud upon the defendants, nor was it a lack of diligence or integrity that the plaintiff owed his principal, unless it was a fact that the defendant was negotiating with the purchaser for the sale of the land, which was known by the plaintiff at the time, but we have seen from the discussion heretofore that such was not the case.

All of the questions raised by counsel for defendants are issues of fact which, under proper instructions, were submitted to the jury, and, there being evidence reasonably tending to support the verdict of the jury, the same will not be disturbed here now on appeal.

Judgment of the trial court is affirmed.

By the Court: It is so ordered.